```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
FERNANDO MARTINEZ,                                                :
                                                                  :
                                Plaintiff,                        :
                                                                  :       18-CV-3961 (JMF)
                -v-                                               :
                                                                  :       MEMORANDUM OPINION
SEIU LOCAL 32BJ; TF CORNERSTONE, INC.;                            :       AND ORDER
and 340 EAST 34II LLC,                                            :
                                                                  :
                                Defendants.                       :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Following his termination, Plaintiff Fernando Martinez sues TF Cornerstone, Inc. and 340 East LLC (collectively, "TFC"), his former employers, and SEIU Local 32BJ (the "Union"), his former union, alleging breaches of (1) the collective bargaining agreement ("CBA") that governed his employment and (2) the duty of fair representation owed to Martinez by the Union. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Martinez's Complaint — the Union for insufficient service of process and TFC for failure to state a claim. For the reasons that follow, the Court grants both motions and dismisses Martinez's claims without prejudice.

## BACKGROUND[1]

Martinez worked as a doorman in a Manhattan apartment building owned by TFC from November 2013 until he was fired on June 4, 2017. *See* Docket No. 1 ("Compl."), ¶ 13.

---

[1] The following facts are drawn from the Complaint and attached exhibits, the CBA, and counsel's declarations regarding service of process on the Union. Although the CBA is not attached to the Complaint, it is a "document[] upon which the complaint relies and which [is] integral to" it, *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir.

Initially, Martinez worked the "graveyard shift" from 11:00 p.m. to 7:00 a.m. *See id.* Several months after he began, he was assigned a different schedule, which required him to work an 11:00 p.m. to 7:00 a.m. shift on Sunday and Monday evenings and a 3:00 p.m. to 11:00 p.m. shift on Tuesday, Wednesday, and Friday afternoons. *See id.* The "split shift" he worked on Tuesdays — working Monday night from 11:00 pm. to 7:00 am, then returning to work eight hours later to work another eight-hour shift from 3:00 p.m. to 11:00 p.m. — left him fatigued. *See id.* Martinez believed that this work schedule violated the CBA, *see id.*, in which TFC agreed "to use its best efforts to provide a minimum of sixteen (16) hours off between shifts for its employees," Docket No. 13-1 ("CBA"), at 63.

Martinez repeatedly told the building supervisor and other TFC's supervisors that his schedule "left him very tired and prone to dozing off," Compl. ¶¶ 13, 14, and he requested a change in his days off that would alleviate the midweek shift change, *id.* ¶ 14. He was told that "management would not change his shift, even though they [sic] conceded that [it] violated" the CBA. *Id.* On several occasions, Martinez was disciplined by TFC for "failing to call in and sleeping through his shift." *Id.* ¶ 13. Martinez told the Union that these disciplinary actions were due to the fatigue caused by his split shift. *See id.* ¶ 14. For each such action, a representative from the Union persuaded Martinez to accept a warning, including one described as a "final warning." *Id.* The Union did not ask TFC to change Martinez's schedule. *See id.*

---

2005), so the Court may rely on it in deciding TFC's motion to dismiss for failure to state a claim, *see, e.g.*, *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 139 (E.D.N.Y. 2014) (considering a CBA on a motion to dismiss despite plaintiff's failure to attach it to the complaint). And, by necessity, the Court must look to "matters outside the complaint" in deciding the Union's motion to dismiss on the basis of insufficient service of process, and "must also consider the parties' pleadings and affidavits in the light most favorable to the non-moving party." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442-43 (S.D.N.Y. 2016) (alteration and internal quotation marks omitted).

On June 4, 2017, TFC fired Martinez "for failing to call in for his shift." *Id.* ¶ 15. Martinez then requested that the Union file a grievance on his behalf. *Id.* At grievance hearings, which were attended by Martinez's shop stewards, TFC insisted that he be fired. *See id.* ¶ 16. Martinez asked the Union to take his termination to arbitration, but the Union declined to do so "on the grounds that it lacked sufficient merit." *Id.* ¶ 17. Martinez appealed that decision to the Union's Grievance Appeal Board. On November 2, 2017, the Union's Joint Executive Board notified Martinez by letter that it was adopting the Appeal Board's recommendation not to arbitrate his termination. *See id.* ¶¶ 17-19. On May 2, 2018 — exactly six months later — Martinez filed this action.

On May 7, 2018, the Honorable Katherine B. Forrest — to whom this case was initially assigned — issued an Order questioning whether the Court had subject-matter jurisdiction and directing Martinez to show cause why the case should not be dismissed. *See* Docket No. 3. Five days later, Martinez's counsel mailed a courtesy copy of the Complaint to the Union, noting in his cover letter that "[p]roper service has not yet been completed under the Federal Rules" and that he was "defer[ring] service of the complaint" until after the Court resolved the issue of subject matter jurisdiction. Docket No. 19-1, Ex. A. On June 6, 2018, Judge Forrest resolved the issue, stating that she was "satisfied" by Martinez's showing that the Court had subject-matter jurisdiction. Docket No. 7, at 1. Despite that ruling, Martinez "inadvertently" neglected to serve the Union; he has not cured the defect since. Docket No. 21 ("Gluck Decl."), ¶¶ 7, 12.

**THE UNION'S MOTION TO DISMISS**

The Union first moves, pursuant to Rule 12(b)(5), to dismiss for insufficient service of process. Rule 4(m) of the Federal Rules of Civil Procedure provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without

3

prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). By its terms, therefore, the Rule *requires* an extension of time for service if a plaintiff shows "good cause" for his delinquency. *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In the absence of such a showing, "a district court *may* grant an extension . . . , but it is not required to do so." *Id.* Courts generally consider a number of factors in deciding whether to grant a discretionary extension. *See DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). Regardless of the balance of the factors, however, a plaintiff "must ordinarily advance *some* colorable excuse for neglect" to receive an extension. *Zapata*, 502 F.3d at 198 (emphasis added); *accord Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("[W]e generally will not reverse a district court's dismissal of an action for lack of service unless the appellant can advance some colorable excuse for neglect." (internal quotation marks omitted)).

Applying these standards here, the Court concludes that the Union's motion should be granted. To be sure, some of the discretionary factors weigh in Martinez's favor, as the Union had actual notice of his claims and his claims are almost certainly now time barred. *See, e.g.*, *Brunson-Bedi v. New York*, No. 15-CV-9790 (NSR), 2018 WL 2084171, at *9 (S.D.N.Y. May 1, 2018) (noting that a defendant's actual receipt of the complaint "weighs in favor of granting an extension"); *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) ("[C]ourts often consider the fact that the statute of limitations has run on a claim as favoring the plaintiff."). But Martinez does not even come close to providing a "colorable excuse" for his undisputed failure to formally serve the Union; on the contrary, it is plain that he simply forgot. *See* Gluck Decl. ¶ 7; *see Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016)

("Inadvertence, mistake or neglect does not constitute good cause for an extension."). In fact, even after being advised that the Union had not been served, *see* Docket No. 14, at 1 n.1, Martinez did not seek an extension to cure the lack of service until October 2, 2018 — two months after the deadline to serve the Union had passed — and did so then only in response to an order to show cause, *see* Docket No. 20; Gluck Decl. ¶ 2. In short, Martinez has "not only failed to show good cause but advanced no colorable excuse whatsoever for his neglect," *Zapata*, 502 F.3d at 193, and thus no extension of time to serve the Union is warranted, *see id.* at 199; *Brunson-Bedi*, 2018 WL 2084171, at *9 (finding that the plaintiff's "utter failure to provide an explanation for the extensive delay in service" warranted dismissal even though her claims would be time barred); *Cassano*, 186 F. Supp. 3d at 324 (same, citing "the length of [the plaintiffs'] delay and their lack of a justifiable excuse for failing to properly serve Defendants"); *Vaher*, 916 F. Supp. 2d at 421-22 (same); *Gibbs v. Imagimed, LLC*, No. 11-CV-2949 (ER), 2013 WL 2372265, at *4-5 (S.D.N.Y. May 30, 2013) (same). Accordingly, the Union's motion to dismiss Martinez's claims is GRANTED.[2]

## TFC'S MOTION TO DISMISS

Next, TFC moves, pursuant to Rule 12(b)(6), to dismiss the Complaint for failure to state a claim. In considering TFC's Rule 12(b)(6) motion, the Court must accept all facts alleged in the Complaint to be true and draw all reasonable inferences in Martinez's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim survives a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

---

[2] Under Rule 4(m), such dismissal is technically without prejudice, although the statute of limitations may well preclude Martinez from bringing new claims against the Union.

5

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

In this case, Martinez alleges what is known as a "hybrid § 301/duty of fair representation claim," in part under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. To state such a claim, a plaintiff must plead "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001). A union breaches its duty of fair representation when (1) "its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith" and (2) there exists "a causal connection between the . . . wrongful conduct and [a member's] injuries." *Id.* at 179 (internal quotation marks omitted). A union's conduct is arbitrary "if, in light of the factual and legal landscape at the time of the union's actions, [its] behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* (internal quotation marks omitted). But that "wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45 (1998)). Thus, as applicable here, "[a] union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation." *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 706 (S.D.N.Y. 2006). So too, "where the union fails to process a meritless grievance, engages in

6

mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance," a plaintiff does not state a hybrid § 301/fair representation claim. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994); *see also Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) ("[P]roof of mere negligence or errors of judgment . . . is insufficient.") (internal quotation marks omitted).

Measured against those standards, Martinez's allegations come up short. At the outset, to the extent Martinez's claims are based on alleged acts or omissions by the Union before November 2, 2017 — for example, the failure to grieve his schedule and the failure to adequately represent him at pre-arbitration grievance meetings, *see id.* — they accrued more than six months before Martinez filed suit and are therefore time barred. *See Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) ("[A] six-month statute of limitations applies to hybrid § 301/fair representation claims.").[3] Indeed, Martinez acknowledges that he was aware that his shift (or, to be more precise, TFC's alleged failure to "use its best efforts" to change his shift, CBA 63) violated the CBA within a few months of starting work. Compl. ¶ 13. Thus, Martinez "knew or should have known of the breach of the duty of fair representation" for at least six months before he filed his Complaint in this case. *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 114 (2d Cir. 1997); *see id.* at 115 (holding that union members should have known their claims accrued because they "could . . . have demanded that the union arbitrate their grievance immediately," but failed to do so);

---

[3] Additionally, it is not clear from the Complaint that Martinez ever *asked* the Union to grieve TFC's failure to adjust his schedule as opposed to merely "inform[ing]" Union representatives "that the disciplinary problems were the result of the shift change." Compl. ¶ 14. Martinez cannot maintain a hybrid claim on that ground if he "did not ask the Union to process a grievance." *Flanigan v. Truck Drivers Local No. 671, Int'l Bhd. of Teamsters*, 942 F.2d 824, 829 (2d Cir. 1991).

7

*Goodman v. Port Auth. of N.Y. & N.J.*, No. 10-CV-8352 (RWS), 2011 WL 3423800, at *5 (S.D.N.Y. Aug. 4, 2011) ("[E]ven if [the plaintiff] had complained to the Union and the Union failed to take action, those claims are time-barred . . ., since he knew or should have know[n] within a few months of the Union's purported failure to address these complaints.").[4]

That leaves only the Union's failure to arbitrate his termination. As to that, Martinez does not allege enough facts to permit a plausible inference that the Union acted arbitrarily or in bad faith. He does not, for example, allege that the Union failed to investigate his grievance at all before declining to arbitrate it, *see, e.g.*, *Torres v. United Serv. Workers Union Local 74*, No. 13-CV-6864 (JS), 2014 WL 4805050, at *5 (E.D.N.Y. Sept. 26, 2014); that the Union misled him into believing it was proceeding with his grievance while not actually doing so, *see Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011); that the Union never responded to his complaint about being terminated, *see Moore v. Roadway Express, Inc.*, No. 07-CV-977 (DLI), 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008); that the Union failed to apprise him of grievance hearings or present key evidence at those hearings, *see Passante v. N.Y. State Nurses Ass'n*, No. 1:10-CV-087 (GLS), 2010 WL 2425953, at *3 (N.D.N.Y. June 11, 2010); or that the Union "grossly misunderstood the evidence" underlying his grievance, *see Shied v. United Cerebral Palsy of N.Y.C., Inc.*, No. 11-CV-2262 CBA, 2012 WL 4049828, at *6 (E.D.N.Y. Sept. 13, 2012). Instead, at most, he alleges that the Union knew that "[Martinez's] disciplinary problems were the result of the shift change"; that Union representatives persuaded

---

[4] The Court is unpersuaded by Martinez's argument that the Union's various failings constituted a "continuing violation" or "course of conduct" culminating in his termination. It "is well settled that a continuous or ongoing failure by the union to represent a plaintiff after the plaintiff knows or should know of the breach does not toll the statute of limitations." *Strassberg v. N.Y. Hotel & Motel Trades Council*, 31 Fed. App'x 15, 17 (2d Cir. 2002) (citing *Flanigan*, 942 F.2d at 827).

him to accept TFC's warnings; that the Union did not ask TFC to change his schedule; and that, after he was fired, he asked the Union to present evidence that TFC had rejected his requests to change his schedule. Compl. ¶¶ 14-19. Even taken together, however, that is not enough to show that the Union acted "perfunctorily" or "arbitrarily" in declining to arbitrate his termination. *Thomas*, 793 F. Supp. 2d at 548; *see, e.g.*, *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) ("[R]efusing to pursue a grievance does not automatically constitute a breach of the duty of fair representation.").[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS both motions to dismiss, and DISMISSES the claims against the Union and TFC. Because Rule 4(m) provides that dismissals for failure to serve should be without prejudice and because Martinez might be able to plead facts to address at least some of the problems with the claims against TFC discussed above, however, the Court grants Martinez one final opportunity to amend his claims. Any amended complaint must be filed **within three weeks of the date of this Memorandum Opinion and Order**. In the absence of an amended complaint by that deadline, the Court will direct the Clerk of Court to close the case.

The Clerk of Court is directed to terminate Docket Nos. 12 and 17.

SO ORDERED.

Dated: March 19, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

---

[5] In light of that conclusion, the Court need not and does not reach the question of whether Martinez adequately pleads a breach of the CBA by TFC. *See, e.g.*, *White*, 237 F.3d at 183.